IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION
JUNE 2024 SESSION

CLERK'S OFFICE U.S. DISTRICT. COURT
AT ROANOKE, VA
FILED

JUN 2 0 2024

LAURA A. AUSTIN, CLERK
BY:
DEPUTY CLERK

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) Case No. 7:24-CR- 19 |
| | ) |
| JAIMEKA MICHELLE AUSTIN, | ) SEALED INDICTMENT |
|     a/k/a "Big Meech," | ) |
|     "Griselda Blanco," | ) In violation of: |
|     "Trina White" | ) 18 U.S.C. § 2 |
| TA'QUAN DE'CARLOS AUSTIN | ) 18 U.S.C. § 1001(a)(3) |
| RICHARD DAVID HENSON BROWN | ) 18 U.S.C. § 1040(a)(2) |
|     a/k/a "Bugatti," | ) 18 U.S.C. § 1343 |
|     "Rich Balla" | ) 18 U.S.C. § 1349 |
| ISRAEL ANTONIO CUNNINGHAM | ) 18 U.S.C. § 1956(a)(1)(B)(i) |
| RAHIIM NOEL CUNNINGHAM | ) 18 U.S.C. § 1957 |
| TIMOTHY EDWARD CUNNINGHAM, | ) |
| JR. | ) |
| MIKKIELIA SENTOYIA FISHER | ) |
| JOSHUA SCOTT FLEMING | ) |
| KIEARRA DESIREE GARDNER | ) |
| SIERRA DESARAY GARRISON | ) |
| DESHAWN LAMAR JOHNSON | ) |
|     a/k/a "Swagg" | ) |
| ██████████ ████ | ) |
| ANTONIO DEVAUGHN LEVESY | ) |
| MILLOT KEVIN LEXIMA | ) |
| XAVIER LEE MANIGAULT | ) |
| TALISHA GEORNELL OTEY | ) |
| COREY DURRELL STEELMAN | ) |
| JAMAL DONNELL STEELMAN | ) |
| JESSICA NICOLE TAYLOR | ) |
| THOMAS MANUEL TAYLOR | ) |
| DENISHA MICHELLE WALKER | ) |
| JENEA SHONTAE WEBB | ) |
| STEPHFON DAVIDO WEBB | ) |
| AKEEM MARQUIS WILLIAMS, | ) |
| | |
|     Defendants. | |

1

## INDICTMENT

The Grand Jury charges:

## INTRODUCTION

At all times relevant to this Indictment:

### The Paycheck Protection Program

1.     The Paycheck Protection Program ("PPP") was a COVID-19 pandemic relief program administered by the Small Business Administration ("SBA") that provided forgivable loans to small businesses for job retention and certain other expenses. The PPP permitted participating third-party lenders to approve and disburse SBA-backed PPP loans to cover payroll, fixed debts, utilities, rent/mortgage, accounts payable, and other bills incurred by qualifying businesses during, and resulting from, the COVID-19 pandemic. PPP loans were fully guaranteed by the SBA.

2.     To obtain a PPP loan, a qualifying business had to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required the business (through its authorized representative) to acknowledge the program rules and make certain affirmative certifications to be eligible to obtain the PPP loan, including that the business was in operation and either had employees for whom it paid salaries and payroll taxes or paid independent contractors. A business applying for a PPP loan was required to provide documentation showing its payroll expenses, such as filed federal income tax documents.

3.     One such federal income tax document was an Internal Revenue Service ("IRS") Schedule C (Form 1040), Profit or Loss from Business (Sole Proprietorship) ("Schedule C"). A Schedule C was attached to a U.S. Individual Income Tax Return, Form 1040, and was used to report income or loss from a business that the taxpayer operated as a sole proprietor.

2

4.      PPP loan applications were electronically submitted or caused to be submitted by the borrower and were received through SBA servers located in Oregon. Once approved, the business received the PPP loan proceeds via an electronic funds transfer from the third-party lender to a financial account under the control of the business.

5.      The proceeds of a PPP loan could be used for certain specified business expenses, such as payroll costs, costs related to the continuation of group health care benefits, or mortgage interest payments. The proceeds of a PPP loan were not permitted to be used by borrowers to purchase consumer goods, automobiles, personal residences, clothing, jewelry, to pay a borrower's personal federal income taxes, or to fund a borrower's ordinary day-to-day living expenses unrelated to the specified authorized expenses.

6.      The PPP allowed interest and principal on the PPP loan to be forgiven entirely if the business spent the loan proceeds on the specified business expenses within a designated period of time (typically within 24 weeks of receiving the proceeds) and used a certain percentage (typically 60%) of the PPP loan proceeds towards payroll expenses.

<u>The Co-Conspirators and Lenders</u>

7.      JAIMEKA MICHELLE AUSTIN (J. AUSTIN), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Mechelle's Boutique LLC.

8.      TA'QUAN DE'CARLOS AUSTIN (T. AUSTIN), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Quan'o's Chimney Sweep, LLC.

9.      RICHARD DAVID HENSON BROWN (BROWN), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Immaculate Balla Cleaning Service LLC.

10.      ISRAEL ANTONIO CUNNINGHAM (I. CUNNINGHAM), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Tate's Lawn Care & Services LLC.

11.      RAHIIM NOEL CUNNINGHAM (R. CUNNINGHAM), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Quanie's Lounge LLC.

12.      TIMOTHY EDWARD CUNNINGHAM, JR (T. CUNNINGHAM), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Gen5 Dog Kennels LLC.

13.      MIKKIELIA SENTOYIA FISHER (FISHER), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Mad Stylez Clothing.

14.      JOSHUA SCOTT FLEMING (FLEMING), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Clear N Shine Auto Detail.

15.      KIEARRA DESIREE GARDNER (GARDNER), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of multiple business entities including businesses named Kiearra Gardner and Kustom Kreationz by Kie LLC.

16.     SIERRA DESARAY GARRISON (GARRISON), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Major Pressure LLC.

17.     DESHAWN LAMAR JOHNSON (JOHNSON), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Affordable Car Care LLC.

18.     ████████████████████████████████████████

████████████████████████████████████████████████

██████

19.     ANTONIO DEVAUGHN LEVESY (LEVESY), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Squeaky Clean Mobile Detailing LLC.

20.     MILLOT LEXIMA (LEXIMA), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Plugd N Kennel LLC.

21.     XAVIER LEE MANIGAULT (MANIGAULT), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named The Goat Car Care LLC.

22.     TALISHA GEORNELL OTEY (OTEY), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of multiple business entities including businesses named Talisha, Lash Tech, and the Butterfly Effect 540 LLC.

23.     COREY DURRELL STEELMAN (C. STEELMAN), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Steel Hauling LLC.

24.     JAMAL DONNELL STEELMAN (J. STEELMAN), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Steel Painters LLC.

25.     JESSICA NICOLE TAYLOR (J. TAYLOR), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named All In Caregiving LLC.

26.     THOMAS MANUELTAYLOR (T. TAYLOR), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Showcase Kennels LLC.

27.     DENISHA MICHELLE WALKER (WALKER), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of multiple business entities including businesses named Denisha Walker and Lit & Fit Sculpting LLC.

28.     JENEA SHONTAE WEBB (J. WEBB), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Nae & Friends Childcare.

29.     STEPHFON DAVIDO WEBB (S. WEBB), a resident of Roanoke, Virginia, purported to be a self-employed individual working in the cleaning/janitorial industry.

30.     AKEEM MARQUIS WILLIAMS (WILLIAMS), a resident of Roanoke, Virginia, purported to be the sole owner and authorized representative of a business named Williams & Williams Moving Company LLC.

31.     Co-Conspirator 1, a resident of Chester, Virginia, was a tax preparer.

32.     Lender A was a financial institution located in New Jersey that was authorized by the SBA as a non-bank lender for PPP loans.

33.     Lender B was an Arizona-based Community Development Financial Institution authorized by the SBA to issue PPP loans.

<u>The PPP Fraud Scheme</u>

34.     In or around June 2020, J. AUSTIN began communicating with multiple individuals regarding fraudulent PPP applications.

35.     Beginning in or around November 2020 and continuing through approximately May 2021, J. AUSTIN advertised that she could obtain PPP loans for individuals in return for payment. During this time, J. AUSTIN collected information from various individuals for the purpose of submitting fraudulent PPP loans on their behalf. Many of these individuals did not have an operational business, so J. AUSTIN offered to nominally establish a business for them for an additional fee.

36.     J. AUSTIN collaborated with multiple co-conspirators to identify individuals who were willing to pay her to file fraudulent PPP loan applications on their behalf (the "fraudulent loan applicants") and who could help create fraudulent documents for these individuals. The fraudulent loan applicants would provide J. AUSTIN with personal identifying information and bank account information for AUSTIN to use in preparing the fraudulent applications. GARDNER and Co-Conspirator 1 assisted J. AUSTIN with preparing and submitting fraudulent PPP applications on behalf of the fraudulent loan applicants. J. AUSTIN paid GARDNER and Co-Conspirator 1 for their work on the scheme.

37.     Co-Conspirator 1 used her tax preparation knowledge to advise J. AUSTIN about the requirements to apply for a PPP loan. She also assisted J. AUSTIN by creating fraudulent Schedules C to support the fraudulent PPP applications and submitting applications on behalf of the fraudulent loan applicants. GARDNER helped create limited liability companies ("LLCs") for

the fraudulent loan applicants and helped obtain Employer Identification Numbers ("EINs") from the IRS for the fictitious LLCs created on behalf of the fraudulent loan applicants.

38.     The fraudulent PPP applications submitted by J. AUSTIN, GARDNER, and Co-Conspirator 1 on behalf of the fraudulent loan applicants contained multiple materially false statements and representations, typically including the date the business had been established, the business's average monthly payroll, the business's gross receipts, that the loan was necessary to support the ongoing operations of the business, and that the funds would be used for authorized purposes.

39.     Some fraudulent loan applicants later used information and documents provided by J. AUSTIN, GARDNER, and Co-Conspirator 1 to apply for additional fraudulent PPP loans.

40.     After the false and fraudulent PPP applications were submitted by or on behalf of the fraudulent loan applicants, the fraudulent loan applicants knowingly signed or caused to be signed a promissory note that contained materially false statements and representations, including that all certifications, authorizations, and representations made on the PPP application remained true and accurate as of the date of the promissory note.

41.     Many of the false and fraudulent PPP applications submitted by J. AUSTIN, GARDNER, Co-Conspirator 1, and the fraudulent loan applicants were approved, and the funds from each fraudulent PPP application were deposited into a financial account belonging to the fraudulent loan applicant. The fraudulent loan applicant then spent some or all of the PPP loan money for unauthorized purposes, including payments to J. AUSTIN.

42.     J. AUSTIN also advised the fraudulent loan applicants on how and when to apply to have their loans forgiven. As a result, some of the fraudulent loan applicants submitted loan forgiveness applications that contained materially false and fraudulent representations.

43.     Some of the fraudulent loan applicants were also receiving Unemployment Insurance at the time their PPP applications were filed and continued to receive Unemployment Insurance after receiving the PPP loan money, despite claiming on their PPP applications that they were continuing to operate a business. When submitting claims for Unemployment Insurance, some of these fraudulent loan applicants falsely certified that they had not applied for or received a PPP loan.

44.     In addition, J. AUSTIN and GARDNER obtained fraudulent PPP loans for themselves.

45.     All told, at least $1.5 million in PPP funds were disbursed based on applications submitted in connection with this PPP fraud scheme.

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

46.     The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

47.     Beginning in and around June 2020 and continuing in or around October 2021, in the Western District of Virginia and elsewhere, the defendants, J. AUSTIN and GARDNER, did knowingly and willfully conspire and agree with each other, and with other persons both known and unknown to the grand jury, to commit the offense of wire fraud, that is, to devise, and intend to devise, a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing the scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

<u>Object of the Conspiracy</u>

48.     It was the object of the conspiracy for the defendants and their co-conspirators to unlawfully enrich themselves by, among other things: (a) submitting and causing the submission of false and fraudulent applications for PPP loans made available through the SBA to provide relief for the economic effects caused by the COVID-19 pandemic; (b) soliciting, offering, paying, and receiving kickbacks in return for preparing false and fraudulent loan applications; (c) diverting fraud proceeds for the personal use of the defendants and their co-conspirators, the use and benefit of others, and to further the conspiracy; and (d) to obtain PPP loan money that was intended for legitimate small business owners.

<u>Manner and Means of the Conspiracy</u>

49.     To carry out the conspiracy and to effect its unlawful object, the defendants and their co-conspirators engaged in a number of means and methods, including those referred to in the section above entitled "The PPP Fraud Scheme," among others.

50.     All in violation of Title 18, United States Code, Section 1349.

**COUNTS TWO THROUGH EIGHTY-TWO**
(Wire Fraud)

The Grand Jury further charges:

51.     The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

52.     On or about the dates below, in the Western District of Virginia and elsewhere, the individuals listed below, for the purpose of executing and attempting to execute the scheme described above, transmitted and caused to be transmitted, by means of wire communication in

interstate commerce, the signals and sounds described below for each count, each transmission constituting a separate count:

| Count | Defendant(s) | Date | Description |
|---|---|---|---|
| 2 | J. AUSTIN | 3/7/2021 | Submission of PPP application to Lender A for Mechelle's Boutique |
| 3 | J. AUSTIN | 3/23/2021 | Wire transfer of approximately $26,195 in PPP proceeds from Lender A into account controlled by J. AUSTIN |
| 4 | J. AUSTIN | 5/14/2021 | Submission of PPP application to Lender A for Mechelle's Boutique |
| 5 | J. AUSTIN | 5/24/2021 | Wire transfer of approximately $26,195 in PPP proceeds from Lender A into account controlled by J. AUSTIN |
| 6 | T. AUSTIN, J. AUSTIN | 2/27/2021 | Submission of PPP application to Lender A for Quano's Chimney Sweep |
| 7 | T. AUSTIN, J. AUSTIN | 4/12/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by T. AUSTIN |
| 8 | T. AUSTIN, J. AUSTIN, GARDNER | 5/21/2021 | Submission of PPP application to Lender A for Quano's Chimney Sweep |
| 9 | T. AUSTIN, J. AUSTIN, GARDNER | 6/1/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by T. AUSTIN |
| 10 | BROWN, J. AUSTIN, GARDNER | 3/16/2021 | Submission of PPP application to Lender A for Immaculate Balla Cleaning Service |
| 11 | BROWN, J. AUSTIN, GARDNER | 4/23/2021 | Wire transfer of approximately $20,833 in PPP proceeds from Lender A into account controlled by BROWN |
| 12 | BROWN, J. AUSTIN, GARDNER | 5/21/2021 | Submission of PPP application to Lender A for Immaculate Balla Cleaning Service |
| 13 | BROWN, J. AUSTIN, GARDNER | 6/1/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by BROWN |
| 14 | I. CUNNINGHAM, J. AUSTIN, GARDNER | 3/31/2021 | Submission of PPP application to Lender B for Tate's Lawn Care And Services LLC |
| 15 | I. CUNNINGHAM, J. AUSTIN, GARDNER | 6/7/2021 | Wire transfer of approximately $20,832 in PPP proceeds from Lender B into account controlled by I. CUNNINGHAM |
| 16 | R. CUNNINGHAM, J. AUSTIN, GARDNER | 3/13/2021 | Submission of PPP application to Lender A for Quanie's Lounge |

| 17 | R. CUNNINGHAM, J. AUSTIN, GARDNER | 4/2/2021 | Wire transfer of approximately $29,165 in PPP proceeds from Lender A into account controlled by R. CUNNINGHAM |
| 18 | T. CUNNINGHAM, J. AUSTIN, GARDNER | 3/13/2021 | Submission of PPP application to Lender A for Gen5 Dog Kennels |
| 19 | T. CUNNINGHAM, J. AUSTIN, GARDNER | 4/12/2021 | Wire transfer of approximately $20,832 in PPP proceeds from Lender A into account controlled by T. CUNNINGHAM |
| 20 | T. CUNNINGHAM, J. AUSTIN, GARDNER | 5/21/2021 | Submission of PPP application to Lender A for Gen5 Dog Kennels |
| 21 | FISHER, J. AUSTIN | 3/2/2021 | Submission of PPP application to Lender A for Mad Stylez Clothing |
| 22 | FISHER, J. AUSTIN | 3/23/2021 | Wire transfer of approximately $20,833 in PPP proceeds from Lender A into account controlled by FISHER |
| 23 | FISHER, J. AUSTIN | 5/18/2021 | Submission of PPP application to Lender A for Mad Stylez Clothing |
| 24 | FISHER, J. AUSTIN | 5/24/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by FISHER |
| 25 | FLEMING, J. AUSTIN, GARDNER | 3/20/2021 | Submission of PPP application to Lender A for Clear N Shine Auto Detail |
| 26 | FLEMING, J. AUSTIN, GARDNER | 4/9/2021 | Wire transfer of approximately $22,412 in PPP proceeds from Lender A into account controlled by FLEMING |
| 27 | FLEMING, J. AUSTIN, GARDNER | 5/25/2021 | Submission of PPP application to Lender A for Clear N Shine Auto Detail |
| 28 | FLEMING, J. AUSTIN, GARDNER | 6/15/2021 | Wire transfer of approximately $22,412 in PPP proceeds from Lender A into account controlled by FLEMING |
| 29 | GARDNER, J. AUSTIN | 1/19/2021 | Submission of PPP application to Lender A for Kiearra Gardner |
| 30 | GARDNER, J. AUSTIN | 4/22/2021 | Wire transfer of approximately $19,725 in PPP proceeds from Lender A into account controlled by GARDNER |
| 31 | GARDNER, J. AUSTIN | 5/21/2021 | Submission of PPP application to Lender A for Kiearra Gardner |
| 32 | GARDNER, J. AUSTIN | 5/28/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by GARDNER |
| 33 | GARRISON, J. AUSTIN | 3/11/2021 | Submission of PPP application to Lender A for Major Pressure LLC |
| 34 | GARRISON, J. AUSTIN | 4/8/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by GARRISON |

| 35 | JOHNSON, J. AUSTIN | 2/27/2021 | Submission of PPP application to Lender A for Affordable Car Care |
| 36 | JOHNSON, J. AUSTIN | 3/30/2021 | Wire transfer of approximately $24,544 in PPP proceeds from Lender A into account controlled by JOHNSON |
| 37 | JOHNSON, J. AUSTIN | 3/2/2021 | Submission of PPP application to Lender A for Affordable Car Care |
| 38 | JOHNSON, J. AUSTIN | 4/14/2021 | Wire transfer of approximately $20,834 in PPP proceeds from Lender A into account controlled by JOHNSON |
| 39 | ██████ J. AUSTIN, GARDNER | 3/11/2021 | Submission of PPP application to Lender A for ██ ██ ██ |
| 40 | ██████ J. AUSTIN, GARDNER | 3/30/2021 | Wire transfer of approximately $20,832 in PPP proceeds from Lender A into account controlled by ████ |
| 41 | LEVESY, J. AUSTIN, GARDNER | 3/4/2021 | Submission of PPP application to Lender A for Squeaky Clean Mobile Detailing LLC |
| 42 | LEVESY, J. AUSTIN, GARDNER | 3/23/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by LEVESY |
| 43 | LEVESY, J. AUSTIN, GARDNER | 5/14/2021 | Submission of PPP application to Lender A for Squeaky Clean Mobile Detailing LLC |
| 44 | LEVESY, J. AUSTIN, GARDNER | 5/24/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by LEVESY |
| 45 | LEXIMA, J. AUSTIN | 2/23/2021 | Submission of PPP application to Lender A for Plugd N Kennel LLC |
| 46 | LEXIMA, J. AUSTIN | 4/15/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by LEXIMA |
| 47 | LEXIMA, J. AUSTIN | 5/24/2021 | Submission of PPP application to Lender A for Plugd N Kennel LLC |
| 48 | LEXIMA, J. AUSTIN | 6/2/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by LEXIMA |
| 49 | MANIGAULT, J. AUSTIN | 3/2/2021 | Submission of PPP application to Lender A for The Goat Car Care LLC |
| 50 | MANIGAULT, J. AUSTIN | 4/6/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by MANIGAULT |
| 51 | MANIGAULT, J. AUSTIN | 5/21/2021 | Submission of PPP application to Lender A for The Goat Car Care LLC |
| 52 | MANIGAULT, J. AUSTIN | 6/1/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by Manigault |

| 53 | OTEY, J. AUSTIN | 2/27/2021 | Submission of PPP application to Lender A for Talisha |
| 54 | OTEY, J. AUSTIN | 4/9/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by OTEY |
| 55 | OTEY, J. AUSTIN | 5/24/2021 | Submission of PPP application to Lender A for Talisha |
| 56 | OTEY, J. AUSTIN | 6/1/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by OTEY |
| 57 | C. STEELMAN, J. AUSTIN, GARDNER | 3/18/2021 | Submission of PPP application to Lender A for Steel-Hauling Cleaning Services |
| 58 | C. STEELMAN, J. AUSTIN, GARDNER | 4/12/2021 | Wire transfer of approximately $20,835 in PPP proceeds from Lender A into account controlled by C. STEELMAN |
| 59 | C. STEELMAN, J. AUSTIN, GARDNER | 5/21/2021 | Submission of PPP application to Lender A for Steel-Hauling Cleaning Services |
| 60 | C. STEELMAN, J. AUSTIN, GARDNER | 5/28/2021 | Wire transfer of approximately $20,835 in PPP proceeds from Lender A into account controlled by C. STEELMAN |
| 61 | J. STEELMAN, J. AUSTIN, GARDNER | 3/16/2021 | Submission of PPP application to Lender A for Steel Painters |
| 62 | J. STEELMAN, J. AUSTIN, GARDNER | 4/7/2021 | Wire transfer of approximately $20,833 in PPP proceeds from Lender A into account controlled by J. STEELMAN |
| 63 | J. TAYLOR, J. AUSTIN | 3/2/2021 | Submission of PPP application to Lender A for All In Caregiving |
| 64 | J. TAYLOR, J. AUSTIN | 3/23/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by J. TAYLOR |
| 65 | T. TAYLOR, J. AUSTIN | 4/2/2021 | Submission of PPP application to Lender A for Showcase Kennels LLC |
| 66 | T. TAYLOR, J. AUSTIN | 4/20/2021 | Wire transfer of approximately $20,830 in PPP proceeds from Lender A into account controlled by T. TAYLOR |
| 67 | WALKER, J. AUSTIN | 1/19/2021 | Submission of PPP application to Lender A for Denisha Walker |
| 68 | WALKER, J. AUSTIN | 2/25/2021 | Wire transfer of approximately $20,833 in PPP proceeds from Lender A into account controlled by WALKER |
| 69 | WALKER, J. AUSTIN | 5/13/2021 | Submission of PPP application to Lender A for Denisha Walker |
| 70 | WALKER, J. AUSTIN | 5/17/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by WALKER |

| 71 | J. WEBB, J. AUSTIN, GARDNER | 3/18/2021 | Submission of PPP application to Lender A for Nae & Friends Childcare |
|----|------|------|------|
| 72 | J. WEBB, J. AUSTIN, GARDNER | 4/6/2021 | Wire transfer of approximately $20,830 in PPP proceeds from Lender A into account controlled by J. WEBB |
| 73 | J. WEBB, J. AUSTIN | 5/21/2021 | Submission of PPP application to Lender A for Nae & Friends Childcare |
| 74 | J. WEBB, J. AUSTIN | 5/28/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by J. WEBB |
| 75 | S. WEBB, J. AUSTIN, GARDNER | 1/20/2021 | Submission of PPP application to Lender A for Stephfon Webb |
| 76 | S. WEBB, J. AUSTIN, GARDNER | 2/18/2021 | Wire transfer of approximately $20,833 in PPP proceeds from Lender A into account controlled by S. WEBB |
| 77 | S. WEBB, J. AUSTIN | 5/7/2021 | Submission of PPP application to Lender A for Stephfon Webb |
| 78 | S. WEBB, J. AUSTIN | 5/13/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by S. WEBB |
| 79 | WILLIAMS, J. AUSTIN, GARDNER | 3/16/2021 | Submission of PPP application to Lender A for Williams and Williams Moving Company |
| 80 | WILLIAMS, J. AUSTIN, GARDNER | 3/30/2021 | Wire transfer of approximately $20,833 in PPP proceeds from Lender A into account controlled by WILLIAMS |
| 81 | WILLIAMS, J. AUSTIN, GARDNER | 5/25/2021 | Submission of PPP application to Lender A for Williams and Williams Moving Company |
| 82 | WILLIAMS, J. AUSTIN, GARDNER | 6/7/2021 | Wire transfer of approximately $20,800 in PPP proceeds from Lender A into account controlled by WILLIAMS |

53.     These violations occurred in relation to and involving a benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency and affected a financial institution.

54.     All in violation of Title 18, United States Code, Sections 1343 & 2(a).

15

## COUNTS EIGHTY-THREE THROUGH ONE HUNDRED TEN
(False Statements)

The Grand Jury further charges:

55.     The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

56.     On or about the dates below, in the Western District of Virginia and elsewhere, the individuals listed below, as principals, aiders, and abettors, did knowingly and willfully make and use a false writing and document, knowing the same to contain a materially false, fictitious, and fraudulent statement and entry in a matter within the jurisdiction of the executive branch of the Government of the United States by submitting and causing to be submitted PPP Loan Forgiveness Application Form 3508S to the SBA for the PPP loan that was disbursed on or about the dates below, certifying compliance with the PPP Rules, when the defendants then and there knew they had not complied with the PPP Rules, each constituting a separate count:

| Count | Defendant | Forgiveness Application Date | Loan Disbursement Date |
|-------|-----------|------------------------------|------------------------|
| 83 | J. AUSTIN | 8/24/2021 | 3/23/2021 |
| 84 | J. AUSTIN | 8/24/2021 | 5/24/2021 |
| 85 | BROWN | 9/2/2021 | 4/23/2021 |
| 86 | BROWN | 9/2/2021 | 6/1/2021 |
| 87 | FISHER | 9/8/2021 | 3/23/2021 |
| 88 | FISHER | 9/8/2021 | 5/24/2021 |
| 89 | FLEMING | 9/1/2021 | 4/12/2021 |
| 90 | FLEMING | 9/1/2021 | 6/16/2021 |
| 91 | GARDNER | 9/20/2021 | 4/23/2021 |
| 92 | GARDNER | 9/20/2021 | 6/1/2021 |
| 93 | GARRISON | 9/8/2021 | 4/8/2021 |
| 94 | LEVESY | 10/28/2021 | 3/23/2021 |
| 95 | LEVESY | 10/28/2021 | 5/24/2021 |
| 96 | LEXIMA | 9/18/2021 | 4/15/2021 |
| 97 | LEXIMA | 9/18/2021 | 6/2/2021 |
| 98 | OTEY | 9/18/2021 | 4/12/2021 |
| 99 | OTEY | 9/18/2021 | 6/2/2021 |
| 100 | C. STEELMAN | 10/15/2021 | 4/13/2021 |

| 101 | C. STEELMAN | 10/15/2021 | 6/1/2021 |
| 102 | J. TAYLOR | 8/25/2021 | 3/23/2021 |
| 103 | T. TAYLOR | 8/25/2021 | 4/21/2021 |
| 104 | WALKER | 10/11/2021 | 2/26/2021 |
| 105 | WALKER | 10/11/2021 | 5/18/2021 |
| 106 | J. WEBB | 9/9/2021 | 4/9/2021 |
| 107 | J. WEBB | 9/9/2021 | 5/28/2021 |
| 108 | S. WEBB | 8/25/2021 | 2/18/2021 |
| 109 | S. WEBB | 8/25/2021 | 5/13/2021 |
| 110 | WILLIAMS | 9/8/2021 | 3/30/2021 |

57.     All in violation of Title 18, United States Code, Sections 1001(a)(3) & 2.

### COUNTS ONE HUNDRED ELEVEN THROUGH ONE HUNDRED TWENTY-FOUR
(Money Laundering)

The Grand Jury further charges:

58.     The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

59.     On or about the following dates, in the Western District of Virginia and elsewhere, the individuals listed below did knowingly engage and attempt to engage in the following monetary transactions by, through, and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is the withdrawal and transfer of funds and monetary instruments, such property having been derived from a specified unlawful activity, that is, wire fraud, in violation of 18 U.S.C. § 1343, and the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1):

| Count | Defendants | Date | Description and Approximate Amounts |
|---|---|---|---|
| 111 | J. AUSTIN | 3/23/2021 | $16,000 transfer from Wells Fargo Bank account xx0325 |
| 112 | J. AUSTIN | 10/4/2021 | $25,000 wire transfer from Wells Fargo Bank account xx8348 |
| 113 | J. AUSTIN | 10/4/2021 | $45,000 wire transfer from Wells Fargo Bank account xx8348 |

| 114 | R. CUNNINGHAM | 4/7/2021 | $17,000 cash withdrawal from Wells Fargo Bank account xx3146 |
| 115 | FLEMING | 4/12/2021 | $15,000 cash withdrawal from Freedom First Credit Union account xx9732 |
| 116 | FLEMING | 6/21/2021 | $12,000 cash withdrawal from Freedom First Credit Union account xx9732 |
| 117 | GARDNER | 6/1/2021 | $15,000 transfer from Woodforest Bank account xx0188 |
| 118 | JOHNSON | 3/31/2021 | $23,000 cash withdrawal from SunTrust Bank account xx9736 |
| 119 | JOHNSON | 4/15/2021 | $15,000 cash withdrawal from SunTrust Bank account xx9736 |
| 120 | MANIGAULT | 4/6/2021 | $15,800 cash withdrawal from Wells Fargo Bank account xx8585 |
| 121 | MANIGAULT | 6/1/2021 | $10,405.39 cash withdrawal from Wells Fargo Bank account xx8585 |
| 122 | C. STEELMAN | 4/13/2021 | $19,000 cash withdrawal from Member One Federal Credit Union account xx319 |
| 123 | WALKER | 5/19/2021 | $12,000 transfer from Blue Eagle Credit Union account xx583 |
| 124 | S. WEBB | 2/22/2021 | $15,000 cash withdrawal from account held at Wells Fargo Bank |

60.     All in violation of Title 18, United States Code, Sections 1957 & 2.

## COUNTS ONE HUNDRED TWENTY-FIVE THROUGH ONE HUNDRED TWENTY-EIGHT
(Money Laundering)

The Grand Jury further charges:

61.     The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

62.     On or about the following dates, in the Western District of Virginia and elsewhere, the defendant, J. AUSTIN, knowing that the property involved in the financial transactions listed below represented the proceeds of some form of unlawful activity, did knowingly conduct and attempt to conduct the financial transactions listed below, which affected interstate and foreign commerce and which involved the proceeds of specified unlawful activity, that is, wire fraud, in

18

violation of 18 U.S.C. § 1343, and the distribution of controlled substances, in violation of 21 U.S.C. § 841(a)(1), knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity:

| Count | Date | Description and Approximate Amounts |
|-------|------|-------------------------------------|
| **125** | 5/25/2021 | $10,000 transfer from Wells Fargo Bank account xx0325 to Wells Fargo Bank account xx4234 |
| **126** | 9/9/2021 | $9,500 cash withdrawal from Wells Fargo Bank account xx0549 |
| **127** | 9/13/2021 | $6,500 cash withdrawal from Wells Fargo Bank account xx0549 |
| **128** | 10/4/2021 | $9,500 cash withdrawal from Wells Fargo Bank account xx0549 |

63.    All in violation of Title 18, United States Code, Sections 1956(a)(1)(B)(i) & 2.

## COUNTS ONE HUNDRED TWENTY-NINE THROUGH ONE HUNDRED FORTY-TWO
(Fraud in Connection with Emergency Benefits)

64.    The Introduction to this Indictment is realleged and incorporated as if fully set forth herein.

65.    Unemployment Insurance (UI) is a state-federal program that provides monetary benefits to eligible workers. Although state workforce agencies administer their respective UI programs, they must do so in accordance with federal laws and regulations. UI payments (benefits) are intended to provide temporary financial assistance to eligible workers who are unemployed through no fault of their own. In the Commonwealth of Virginia, the Virginia Employment Commission ("VEC") administers the UI program.

66.    On March 13, 2020, the President of the United States declared the ongoing Coronavirus Disease (Covid) pandemic to be an emergency under § 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C §§ 5121-5207).

67.     In connection with that emergency declaration, between March 18, 2020, and March 11, 2021, Congress and the President authorized multiple programs to fund unemployment insurance, including Pandemic Unemployment Assistance ("PUA"), Pandemic Emergency Unemployment Compensation ("PEUC"), Federal Pandemic Unemployment Compensation, and the Lost Wage Assistance Program (collectively "pandemic unemployment programs"). Together, these programs offered unemployment benefits of varying amounts from as early as March 2020 through September 2021.

68.     The pandemic unemployment programs offered benefits to individuals who would not otherwise be eligible for unemployment insurance because they were: (1) self-employed, seeking part-time employment, or otherwise would not qualify for regular UI (for example, independent contractors and gig workers); and (2) unemployed, partially unemployed, unable to work, or unavailable to work due to specific COVID-19 related reasons(s). Coverage included individuals who had exhausted all rights to regular UI or extended benefits under state or federal law or under PEUC.

69.     The pandemic unemployment insurance programs were administered by the various states, including the Commonwealth of Virginia, but their benefits were funded by the federal government. In order to receive pandemic benefits, an applicant accessed a website maintained and administered by the VEC and filed a claim. The VEC did not require claimants to file separate claims for each pandemic unemployment program. A single accepted PUA application and PUA weekly certification thereafter would entitle the claimant to receive benefits from all available programs.

70.     To apply for pandemic unemployment benefits via the VEC website, claimants had to answer specific questions to establish their eligibility for pandemic unemployment benefits.

20

Claimants provided their name, Social Security Number, and mailing address and self-certified that they met one of the COVID-19-related reasons for being unemployed, partially unemployed, or unable or unavailable to work. The VEC also required claimants to identify whether they had performed any work or engaged in any self-employment for each week in which they claimed pandemic unemployment benefits. Claimants also were required to answer whether they had applied for or received funds from other income replacement programs, including PPP, for each week in which they claimed pandemic unemployment benefits. A claimant who received PPP funds was not eligible to receive pandemic unemployment benefits. Claimants then attested, under penalty of perjury, that the information provided in the claim application was true and accurate.

71.     On or about the following dates, in the Western District of Virginia and elsewhere, the individuals listed below did knowingly make materially false, fictitious, and fraudulent statements and representations on claim applications for pandemic unemployment benefits that were authorized, paid, and disbursed in connection with an emergency declaration under § 501 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. §§ 5191), for the benefit weeks ending in the approximate dates listed below, to wit, that he/she had not applied for nor received PPP funds during the week for which the defendant sought pandemic unemployment benefits when, in fact, the defendant had received PPP funds during that week:

| Count | Defendant | Submission Date | Benefits Week Ending Date |
|-------|-----------|-----------------|---------------------------|
| 129 | T. AUSTIN | 4/20/2021 | 4/17/2021 |
| 130 | T. AUSTIN | 9/8/2021 | 6/5/2021 |
| 131 | FISHER | 3/29/2021 | 3/27/2021 |
| 132 | FISHER | 6/1/2021 | 5/29/2021 |
| 133 | GARDNER | 3/28/2021 | 3/27/2021 |
| 134 | GARDNER | 4/26/2021 | 4/24/2021 |
| 135 | GARDNER | 6/7/2021 | 6/5/2021 |
| 136 | ███ | 4/4/2021 | 4/3/2021 |
| 137 | MANIGAULT | 4/11/2021 | 4/10/2021 |

| 138 | OTEY | 9/7/2021 | 4/17/2021 |
| 139 | OTEY | 9/14/2021 | 6/5/2021 |
| 140 | J. TAYLOR | 3/28/2021 | 3/27/2021 |
| 141 | S. WEBB | 3/21/2021 | 2/20/2021 |
| 142 | S. WEBB | 6/21/2021 | 5/15/2021 |

72.     All in violation of Title 18, United States Code, Sections 1040(a)(2) & 2.

## NOTICE OF FORFEITURE

1.      Upon conviction of one or more of the felony offenses alleged in this Indictment,

defendants shall forfeit to the United States:

> a.  any property, real or personal, which constitutes or is derived from proceeds traceable to said offenses, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461.

2.      The property to be forfeited to the United States includes but is not limited to the

following property:

> a.  **Money Judgment**
>
> Not less than $856,365 in United States currency and all interest and proceeds traceable thereto, in that such sum in aggregate was obtained directly or indirectly as a result of said offenses or is traceable to such property.

3.      If any of the above-described forfeitable property, as a result of any act or omission

of the defendant:

> a.  cannot be located upon the exercise of due diligence;
> b.  has been transferred or sold to, or deposited with a third person;
> c.  has been placed beyond the jurisdiction of the Court;
> d.  has been substantially diminished in value; or
> e.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States to seek forfeiture of any other property of the defendant up to

the value of the above-described forfeitable property, pursuant to 21 U.S.C. § 853(p).

A TRUE BILL this _20th_ day of June 2024.

22

_Grand Jury Foreperson_
FOREPERSON

FOR CHRISTOPHER R. KAVANAUGH
UNITED STATES ATTORNEY